Case 4:25-cv-04796   Document 14   Filed 11/21/25 in TXSD   Page 1 of 4

United States District Court
Southern District of Texas
**ENTERED**
November 21, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **FOUSSENI MAMAN SANI,** | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | **CIVIL ACTION NO. 4:25-cv-4796** |
| | § | |
| **PAMELA BONDI,** *et al.*, | § | |
| | § | |
| Respondents. | § | |

## ORDER

Petitioner Fousseni Maman Sani, a detainee in the custody of U.S. Immigration and Customs Enforcement (ICE) in Houston, Texas, filed a petition for habeas corpus relief under 28 U.S.C. § 2241 ("Petition"). ECF No. 1. Having considered the briefing and Parties' arguments during a hearing held on November 10, 2025, the Court hereby **GRANTS** the Petition and **ORDERS** Petitioner's immediate release from detention.

The Immigration and Nationality Act ("INA") typically allows the United States Government ("the Government") ninety days to remove a noncitizen following an order of removal. 8 U.S.C. § 1231(a)(1). This "removal period" begins when a removal order "becomes administratively final"; when a court, having stayed removal pending review, issues its final order; or when the noncitizen is released from non-immigration detention. *Id.* If more than one of these conditions applies, the "latest" date controls. *Id.* The ninety-day period may be "extended . . . if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." *Id.* The Government may also keep a person in prolonged custody if they present certain dangers to the community or are "unlikely to comply with [their] order of removal." 8 U.S.C. § 1231(a)(6). After six months of post-removal custody, continued confinement may be

unconstitutional. *See Zadvydas v. Davis*, 533 U.S. 678, 699 (2001) at 690, 701. Under *Zadvydas v. Davis*, if a noncitizen who has been detained for over six months "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701. In the event it cannot, the individual must be released. *See id.* at 700.

Petitioner is a dual citizen of Togo and Ghana. He is bisexual and faces a high risk of persecution if he returns to either country. ECF No. 1 at 11-2; ECF No. 11 – Ex. 1 at 15-21. Petitioner came to the United States in October of 2024 and was apprehended by immigration authorities. ECF No. 11 – Ex. 2 at 3. At that time, he expressed his fears regarding repatriation to Togo and Ghana. ECF No. 1 at 10. Following a credible fear interview, an asylum officer determined he had a credible fear of returning to Togo.[1] *Id.* The Government subsequently initiated removal proceedings against him. *Id.* During a December master calendar hearing, the Government informed Petitioner that his country of removal was Togo. ECF No. 11 – Ex. 1 at 2. Petitioner then sought asylum and withholding of removal to Togo. *Id.* At another hearing on January 31, 2025, Petitioner was simultaneously ordered removed to Togo and granted withholding of removal to Togo. ECF No. 1 – Ex. 1 at 1, 3. His removal order made no mention of Ghana. *See* ECF No. 1 – Ex. 1. Because Petitioner waived his right to appeal, the order became final on that day. *See* 8 C.F.R. § 1241.1(b).

In May of 2025, Petitioner learned that the Government intended to effectuate his removal to Ghana. ECF No. 1 at 11-12; *see* ECF No. 1 – Ex. 4 at 1. He once again expressed his fears of

---

[1] The immigration judge presiding over Petitioner's case stated in the later of Petitioner's two removal orders that Petitioner's representations regarding his persecution in Togo and Ghana were consistent from the time he entered the United States through the date of the second order. ECF No. 11 – Ex. 1 at 10; 13 ("The Court is most persuaded by the uniformity of Respondents account in two applications, two declarations, two merits hearings, and five supporting declarations that described dates and places that corroborated the facts Respondent asserted in all documents and hearings.").

2

persecution, and the presiding immigration judge reopened his "removal proceedings for the sole purpose of addressing [his] fear of being removed to Ghana." ECF No. 1 – Ex. 4 at 1. On October 2, 2025, the judge ordered Petitioner removed to Ghana and granted withholding of removal to that country. ECF No. 11 – Ex. 1 at 18-21, 22. She also once again ordered Petitioner removed to Togo and withheld his removal to Togo. *Id.* at 15-17, 22. This order became final on November 1, 2025. ECF No. 11 at 4.; 8 C.F.R. § 1241.1(c).

The constitutionality of Petitioner's continued confinement turns in part on whether the removal period began on January 31, 2025, or November 1, 2025. The Government contends that Petitioner's second removal order triggered the ninety-day removal period. However, his first removal order became final on January 31, 2025. In *Riley v. Bondi*, the Supreme Court stated that "withholding-only proceedings do not disturb the finality of an otherwise final order of removal." 606 U.S. 259, 272 (2025); *see id.* at 267. Petitioner has therefore been in post-removal custody for over nine months.

The Government next argues that Petitioner's request for withholding of removal to Ghana "tolled" the *Zadvydas* period, justifying his continued detention. ECF No. 11 at 6. Given the facts of this case, the Court is not persuaded. The procedural history here is instructive. In December of 2024, Petitioner participated in a hearing in which an immigration judge "directed [his] country of removal as Togo. [He] was provided with an application for asylum and related relief (Form I-589)." ECF No. 11 – Ex. 1 at 2. He subsequently pursued asylum and withholding of removal to Togo. *Id.* Petitioner's initial removal order did not raise the possibility that he might be removed to Ghana. *Id.* at 3. Petitioner first learned that he would be removed to Ghana in May of 2025.[2]

---

[2] The record contains potentially conflicting indications as to whether Petitioner sent letters prior to this date expressing his fear of removal to Ghana. *Compare* ECF No. 11 – Ex. 1 ("Over the following months, the Court received a series of letters from Respondent describing the actions taken by DHS to remove the Respondent to Ghana. On May 15, 2025, the Court deemed the letters to be a Motion to Reopen.") *with* ECF No 1 – Ex. 4 at 1 ("As

3

ECF No. 1 at 11-12. This change in circumstance prompted him to immediately seek additional protection in the form of withholding of removal to Ghana.[3] *See* ECF No. 1 – Ex. 4 at 1; ECF No. 1 at 11-12. Any resulting delay cannot be attributed to Petitioner. For the reasons outlined here and in the preceding paragraph, Petitioner's period of detention exceeds both the ninety days prescribed by the INA as well as *Zadvydas*' six-month threshold.

Finally, the fact that Petitioner may not be removed to either of his countries of citizenship suggests his removal is not reasonably foreseeable at this time. The Government expressed its intent to remove Petitioner to a third country, and it may ultimately do so. However, there is currently no indication that any third country is willing to accept Petitioner. Absent such an indication, his removal is not reasonably foreseeable.

The Court concludes that Petitioner's ongoing detention contravenes the INA and *Zadvydas*. Accordingly, Court the hereby **GRANTS** the Petition and **ORDERS** Petitioner's immediate release from custody.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 21st day of November, 2025.

Keith P. Ellison
United States District Judge

---

previously ruled by the [Immigration] Court in its Order dated May 28, 2025, the Court has deemed Respondent's letter received by the Court on May 15, 2025, a Motion to Reopen.") *and* ECF No. 1 at 11-12 (seeming to suggest that Petitioner first learned about his impending removal to Ghana in May). To the extent that Petitioner may have received information before May that he might be removed to Ghana and sent earlier letters to the immigration court, this Court considers such letters to be further evidence that Petitioner promptly sought relief to ensure his safety upon learning that removal to Ghana was a possibility.
[3] Petitioner did not challenge the validity of his existing removal order.